[Cite as *State v. Walters*, 2011-Ohio-6247.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25391 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CLIFFORD DEON WALTERS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 09 09 2805 |

DECISION AND JOURNAL ENTRY

Dated: December 7, 2011

BELFANCE, Presiding Judge.

{¶1} Clifford Walters appeals his convictions for having a weapon while under disability, receiving stolen property, and illegal use or possession of drug paraphernalia. For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2} Three men attacked Robert and Maureen Bartley inside the house where they temporarily lived as guests of Deborah Miller. The men forced them, at gunpoint, to lie on the floor while the men searched the house. Apparently, the men were searching for something in particular; whatever it was, they did not find it. They restrained Mr. and Mrs. Bartley and told them that they would be back. Then the robbers left, taking one of the Bartleys' cars.

{¶3} The Bartleys spoke to the police who promised to put an extra patrol in their neighborhood. Nevertheless, a couple days later, Mr. and Mrs. Bartley were awakened by three men, whom the Bartley's believed to be the same men that had previously robbed them. This time, the men stole some televisions and some jewelry, which belonged to Ms. Miller. The men also stole a second car.

{¶4} Following the second robbery, Eric Miller, Ms. Miller's son and the nephew of Mr. Bartley, received an anonymous phone call. The caller told Mr. Miller that, in exchange for $1,000, the caller could help Mr. Miller retrieve some of Ms. Miller's jewelry. Mr. Miller contacted the Akron Police Department and, with the police agreeing to provide surveillance, agreed to meet with the caller. A man and a woman met with Mr. Miller, who gave the man the $1,000. However, the man and the woman fled, eluding the police.

{¶5} Sergeant David Garro used phone records to determine that the call to Mr. Miller was made from a phone belonging to Diamond Roberts. When Sergeant Garro confronted Ms. Roberts, she told him that she had pawned a necklace at Mr. Walters' request and that she had seen televisions at Mr. Walters' residence. She told Sergeant Garro that, when she asked Mr. Walters where he had gotten the televisions, Mr. Walters responded that he had committed a robbery in Springfield Township. Based on the information provided by Ms. Roberts, the Akron Police recovered the necklace that Ms. Roberts had pawned, and Ms. Miller identified it as being one of the items stolen from her home.

{¶6} Sergeant Garro then secured a search warrant for Mr. Walters' residence. During the subsequent search, the police recovered drug paraphernalia, televisions belonging to the Bartleys, and a handgun.

{¶7} A jury found Mr. Walters not guilty of two counts of aggravated burglary, two counts of aggravated robbery, three counts of kidnapping, and one count of possession of cocaine. However, the jury found Mr. Walters guilty of receiving stolen goods, having a weapon under disability, and possessing drug paraphernalia. The trial court sentenced Mr. Walters to an aggregate term of six years in prison. Mr. Walters has appealed, raising six assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE OBTAINED FROM A SEARCH WARRANT THAT WAS BASED UPON AN AFFIDAVIT THAT LACKED PROBABLE CAUSE."

{¶8} In Mr. Walters' first assignment of error, he argues that the trial court erroneously denied his motion to suppress because Sergeant Garro's affidavit was insufficient to establish probable cause and, therefore, the search warrant was invalid. We disagree.

{¶9} Generally, review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, at ¶8. When reviewing the sufficiency of probable cause contained in an affidavit in support of a search warrant, the reviewing court must determine whether the affidavit provided a substantial basis for concluding that probable cause existed. *State v. George* (1989), 45 Ohio St.3d 325, paragraph two of the syllabus. See, also, *State v. Richardson*, 9th Dist. No. 24636, 2009-Ohio-5678, at ¶9. However, the reviewing court should not substitute its judgment for that of the judge or magistrate who issued the search warrant. *George*, 45 Ohio St.3d at paragraph two of the syllabus.

{¶10} Crim.R. 41(C) addresses the issuance of search warrants and provides that "[a] warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record

or an affidavit or affidavits communicated to the judge * * * establishing grounds for issuing the warrant." Crim.R. 41(C)(1). The affidavit:

> "shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located." Id.

"If the judge is satisfied that probable cause for the search exists, the judge shall issue a warrant identifying the property and naming or describing the person or place to be searched." Crim.R. 41(C)(2).

{¶11} Probable cause has been defined as "'a reasonable ground for belief of guilt.'" (Internal quotations omitted.) *State v. Moore* (2000), 90 Ohio St.3d 47, 49, quoting *Carroll v. United States* (1925), 267 U.S. 132, 161. It means "more than bare suspicion: Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States* (1949), 338 U.S. 160, 175-176, quoting *Carroll,* 267 U.S. at 162.

{¶12} "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Crim.R. 41(C)(2). "[W]here these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common sense, manner." (Internal quotations and citations omitted.) *Richardson* at ¶14.

{¶13} Sergeant Garro, in his affidavit, averred the following: (1) Mr. and Mrs. Bartley had been robbed on two separate occasions; (2) the robbers took money, jewelry, cell phones,

prescription drugs, two televisions and two automobiles; (3) some of the stolen items belonged to Ms. Miller, who was also a resident of the house; (4) Mr. Miller was contacted by an unknown person who offered to sell back some of the stolen jewelry; (5) Mr. Miller informed the police about the call, and the police agreed to conduct surveillance when Mr. Miller met with the caller; (6) when Mr. Miller met with the caller, an unknown woman accompanied the caller; (7) after Mr. Miller paid the caller, the caller and the woman ran, eluding the police; (8) Sergeant Garro, using phone records, determined that the call to Mr. Miller had been placed from a phone owned by Ms. Roberts and determined that she was the unknown female who had met with Mr. Miller; (9) Ms. Roberts told Sergeant Garro that she had sold a necklace to a pawnshop at the behest of her uncle, Mr. Walters; (10) Ms. Roberts told Sergeant Garro that Mr. Walters had two televisions in his home and that, when she asked where he had gotten them, he told her from a robbery in Springfield township; and (11) the Akron Police recovered the necklace Ms. Roberts had sold to the pawnshop, and Ms. Miller identified it as one of her pieces of jewelry that had been stolen.

{¶14}  In light of the above, we conclude that the affidavit did provide a substantial basis for concluding that probable cause existed and, therefore, the trial court did not err in denying the motion to suppress.  The affidavit contained detailed information concerning the investigation of the multiple robberies and the factual basis for Officer Garro's belief that stolen property was located at Mr. Walters' home.  While Mr. Walters contends that Sergeant Garro's affidavit failed to establish Ms. Roberts' reliability, the affidavit establishes that Ms. Roberts had pawned a necklace, which was the same necklace Ms. Miller identified as having been stolen in the robberies.  The affidavit also relates that Ms. Roberts told the police that her uncle had stolen two televisions in a robbery in Springfield Township; Sergeant Garro indicated in his affidavit

that two televisions had been stolen from Mr. and Mrs. Bartley's home. Furthermore, Sergeant Garro was able to corroborate some of the information Ms. Roberts gave him and confirm that it matched information he learned while investigating the robberies. Thus, Sergeant Garro provided a substantial basis for "believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Crim.R. 41(C)(2).

{¶15} Mr. Walters also suggests that the affidavit is insufficient because it fails to contain information regarding Ms. Roberts' possible bias, specifically that she could be considered a suspect in the robberies and, thus, had good reason to implicate Mr. Walters. However, the affidavit conveyed facts from which a reader could discern Ms. Roberts' potential bias. The affidavit clearly indicates that Ms. Roberts had taken money from Mr. Miller in connection with this case and eluded police and that Ms. Roberts pawned Ms. Miller's stolen necklace. Accordingly, the affidavit sufficiently informed the issuing judge about Ms. Roberts' possible bias, given the factual assertions that related to Ms. Robert's involvement and potential culpability.

{¶16} Mr. Walters also complains that the affidavit did not indicate whether or not Ms. Roberts' had any criminal history. However, Mr. Walters has not pointed to legal authority that provides that the affiant must comment upon a person's criminal history where none exists. While Mr. Walters argues that *Richardson* sets forth such a requirement, his reliance upon *Richardson* is misplaced; the affiant in *Richardson* did not disclose the criminal history of the informant. There is nothing in the record before us to suggest that Ms. Roberts had any prior criminal history; on the contrary, she testified at trial that she had no criminal history. Accordingly, the fact that Sergeant Garro's affidavit does not discuss Ms. Roberts' *lack* of a criminal record does not render it insufficient to support a finding of probable cause.

**{¶17}** The affidavit provided the issuing judge with corroboration of some of Ms. Roberts' information and properly relayed her potential bias. Accordingly, the information contained in Sergeant Garro's affidavit was sufficient "'to warrant a man of reasonable caution in the belief that'" Mr. Walters' residence contained evidence from robberies. *Brinegar*, 338 U.S. at 175-176, quoting *Carroll,* 267 U.S. at 162.

**{¶18}** Mr. Walters' first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO DISMISS THE CHARGE OF HAVING WEAPONS WHILE UNDER DISABILITY BECAUSE DEFENDANT WAS NOT UNDER A DISABILITY AT THE TIME OF THE INDICTMENT."

**{¶19}** In Mr. Walters' second assignment of error, he contends that, because he did not have a prior conviction which could form the basis of the charge of having a weapon under disability, the trial court should have dismissed the charge. Mr. Walters' argument is premised upon his assertion that his prior convictions for attempted murder and aggravated burglary in 2003 were void due to the improper imposition of post-release control. We disagree.

**{¶20}** After Mr. Walters submitted his brief, the Supreme Court of Ohio released *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238. In *Fischer*, the Supreme Court held that, if a trial court improperly imposed post-release control, only the post-release control portion of the defendant's sentence was void. *Fischer* at ¶26. Accordingly, to the extent that Mr. Walters' 2003 sentence failed to properly impose post-release control, only that portion of his sentence was void, not his conviction in its entirety; the lawful parts of Mr. Walters' 2003 sentencing entry remain valid. *State v. Vang*, 9th Dist. No. 25769, 2011-Ohio-5010, at ¶5, citing *Fischer* at paragraph three of the syllabus. Thus, Mr. Walters was under disability for the purposes of having a weapon under disability.

**{¶21}** Mr. Walters suggests that his 2003 conviction was actually vacated. The record reflects that, during the trial of this matter, the trial court was aware of Mr. Walters' pending motion to vacate his 2003 sentence. However, his motion had not been granted at the time he was convicted of having weapons under disability, and, thus, his 2003 convictions were undisturbed. Notwithstanding, even if the trial court vacated Mr. Walters' 2003 conviction in its entirety, the trial court was not empowered to do so. *Vang* at ¶5. (A "trial court [is] not empowered to vacate or otherwise amend the parts of [an] original sentence that [are] not void[.]")

**{¶22}** Mr. Walters's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED DEFENDANT'S CRIM.R. 29(A) MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR HAVING WEAPONS WHILE UNDER DISABILITY."

**{¶23}** In Mr. Walters' third assignment of error, he argues that the State failed to present sufficient evidence for the jury to find that he knowingly had or carried a weapon while under disability. We disagree.

**{¶24}** Whether the State presented sufficient evidence to support a conviction is a question of law that this Court reviews de novo. *State v. Williams*, 9th Dist. No. 24731, 2009–Ohio–6955, at ¶18, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. In reviewing the evidence, we do not evaluate credibility and we make all reasonable inferences in favor of the State. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273. The State's evidence is sufficient if "any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.

{¶25}  Mr. Walters was convicted of violating R.C. 2923.13(A)(2), which provides that, "[u]nless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been convicted of any felony offense of violence[.]"

{¶26}  As discussed above, Mr. Walters' conviction for aggravated robbery was not void, and, therefore, he was under disability for the purposes of R.C. 2923.13(A)(2).  Furthermore, Mr. Walters' concedes that an operable firearm was retrieved from his residence.  Accordingly, the issue in dispute is whether Mr. Walters knowingly possessed the firearm.

{¶27}  According to Detective Jeffrey Lamm and Sergeant Garro, the police recovered the firearm in question from a shoebox in the closet of Mr. Walters' bedroom.  There was also testimony that Mr. Walters was in possession of televisions matching the description of those stolen from Mr. and Mrs. Bartley.  Mr. and Mrs. Bartley testified that one of the robbers who took the televisions had a gun.  Ms. Roberts testified that Mr. Walters told her that he had gotten the televisions from a robbery.  Ms. Roberts also testified that Mr. Walters had given her a necklace to pawn, which Ms. Miller later identified as one that had been stolen when Mr. and Mrs. Bartley were robbed at gunpoint.

{¶28}  When viewed in the light favorable to the State, there was sufficient evidence to support Mr. Walters' conviction for having a weapon under disability, and, therefore, the trial court did not err in denying Mr. Walters' Crim.R. 29 motion.

{¶29}  His third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

"DEFENDANT'S CONVICTION FOR HAVING WEAPONS WHILE UNDER DISABILITY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶30} In Mr. Walters' brief, he combines the discussion of his fourth assignment of error with his discussion of his third assignment of error. However, Mr. Walters does not develop a manifest weight argument in his merit brief. See App.R. 12(A)(2) and 16(A)(7); *Deutsche Bank Natl. Trust Co. v. Taylor*, 9th Dist. No. 25281, 2011-Ohio-435, ¶7. Mr. Walters' fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN SENTENCING DEFENDANT TO CONSECUTIVE SENTENCES WITHOUT MAKING THE REQUIRED FINDING UNDER R.C. 2929.14(B) AND (E)(4), AND R.C. 2929.19(B)(2)."

{¶31} In Mr. Walters' fifth assignment of error, he essentially argues that *Oregon v. Ice* (2009), 555 U.S. 160, overruled *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, and reinstated the sentencing statutes that had been held unconstitutional in *Foster*. Therefore, according to Mr. Walters, the trial court was required to make certain findings of fact before sentencing him to consecutive sentences.

{¶32} However, as with Mr. Walters' second assignment of error, subsequent to the parties' submitting their briefs, the Supreme Court of Ohio addressed this issue. In *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, the Supreme Court held that *Ice* "does not revive Ohio's former * * * R.C. 2929.14(E)(4) and 2929.41(A)[.]" Id. at paragraph two of the syllabus. Furthermore, it noted that "*Foster* also severed a number of statutory provisions [(including R.C. 2929.14(B) and R.C. 2929.19(B)(2))] besides the consecutive-sentencing ones on the authority of *Blakely* and *Apprendi*[,] * * * and the holdings in *Foster* regarding these provisions were not implicated in *Ice*." Id. at ¶27; see, also, id. at ¶51, fn. 10 (Brown, C.J., dissenting). Accordingly, when the trial court sentenced Mr. Walters, it was "not obligated to engage in judicial fact-finding prior to imposing consecutive sentences[.]" *Hodge* at paragraph three of the syllabus.

**{¶33}** Mr. Walters' fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN IMPOSING COURT COSTS IN ITS SENTENCING ENTRY WHEN IT DID NOT IMPOSE THOSE COSTS IN OPEN COURT AT THE SENTENCING HEARING."

**{¶34}** In Mr. Walters' sixth assignment of error, he argues that the trial court erred when it imposed court costs on him in its journal entry after failing to do so at his sentencing hearing. We agree.

**{¶35}** Crim.R. 43 requires "that a criminal defendant must be present at every stage of his trial, including sentencing." *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, at ¶22. However, the trial court did not inform Mr. Walters at his sentencing hearing that it was imposing court costs. This oversight constitutes reversible error as it deprived Mr. Walters the opportunity to seek a waiver of court costs by claiming indigency. Id.

**{¶36}** Accordingly, Mr. Walters' sixth assignment of error is sustained.

### III.

**{¶37}** Mr. Walters' sixth assignment of error is sustained, and his other assignments of error are overruled. We affirm Mr. Walter's convictions, but remand the cause to the trial court for the limited purpose of allowing Mr. Walters to move the court for a waiver of the payment of court costs. Should Mr. Walters file such a motion, the court should rule upon it within a reasonable time.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
CONCURS

DICKINSON, J.
CONCURS, SAYING:

{¶38} I concur in the majority's judgment and all of its opinion except the refusal to consider Mr. Walters' fourth assignment of error on its merits. The jury did not lose its way and create a manifest miscarriage of justice by convicting him of having weapons while under a disability. Accordingly, his fourth assignment of error is properly overruled.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.